IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TOBY A. RATCLIFFE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:12-CV-567 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Toby A. Ratcliffe ("Ratcliffe") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381-83f. Specifically, Ratcliffe alleges that the Administrative Law Judge ("ALJ") erroneously afforded no weight to the opinion of his treating physician, and failed to adequately address his mental impairments and the combined effect of his physical and mental impairments.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Ratcliffe's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt No. 14).

1

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Ratcliffe failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Ratcliffe bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals

the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Ratcliffe was born on October 17, 1960 (Administrative Record, hereinafter "R." at 34, 220), and is considered a "younger person" under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). Ratcliffe is insured through December 31, 2011 (R. 12); therefore he must show that his disability began before the end of his insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Ratcliffe quit school in the ninth grade, but later obtained his GED. R. 34, 39, 340, 429. Ratcliffe previously worked as a janitor, carpenter, maintenance man, and screw driver operator. R. 244, 258-61. Ratcliffe reported that during the relevant period, he had the capacity to prepare small meals, check the mail, do laundry, clean, grocery shop once a week, visit his brother on the weekends. R. 250-57.

## Claim History

Ratcliffe filed for DIB and SSI on December 12, 2008, claiming that his disability began on March 21, 2008, due to back problems and anxiety disorder. R. 213-28, 238, 242. The state agency denied his application at the initial and reconsideration levels of administrative review. R. 56-109, 112-24, 128-39. On February 14, 2011, ALJ Joseph Scruton held a hearing to consider Ratcliffe's disability claim. R. 24-60. Ratcliffe was represented by an attorney at the hearing, which included testimony from Ratcliffe and vocational expert James Williams. R. 25-55. Following the hearing, Ratcliffe amended his alleged onset date of disability to December 31, 2009. R. 198-99.

On April 22, 2011, the ALJ entered his decision denying Ratcliffe's claims. R. 7-24. The ALJ found that Ratcliffe suffered from the severe impairments of degenerative disc disease of the lumbar spine, anxiety and hypertension. R. 12. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 12-14. The ALJ further found that Ratcliffe retained the residual functional capacity ("RFC") to perform light work; maintain attention and concentration well enough to complete tasks with short, simple instructions; occasionally interact with others in the workplace; but was unable to perform jobs that involve more than very little interaction with the public. R. 14. The ALJ determined that Ratcliffe could not return to any of his past relevant work (R. 17), but that Ratcliffe could work at jobs that exist in significant numbers in the national economy: namely price marker, garment sorter, and laundry folder. R. 18. Thus, the ALJ concluded that Ratcliffe was not disabled. R. 19.

On April 22, 2011, Ratcliffe submitted additional evidence to the Appeals Council with a request for review. R. 4-5. The new evidence consisted of additional treatment records dated

February 2011 to March 2012. The Appeals Council considered the additional evidence and concluded that it did not provide a basis for changing the ALJ's decision. R. 2. This appeal followed.

## ANALYSIS

Ratcliffe argues that the ALJ erred by not giving proper weight to the opinions of his treating physician, James Lovelace, M.D., nurse practitioner Nancy O'Neill and consultative physician Robert Stephenson, M.D., who found that Ratcliffe has severe functional limitations. In determining Ratcliffe's RFC, the ALJ considered the opinions of Dr. Lovelace, Nurse O'Neill and Dr. Stephenson, but gave them little weight, finding them unsupported by and inconsistent with other evidence in the record. The ALJ gave greater weight to the opinions of the state agency reviewing physicians, Michael Hartman, M.D., and Robert McGuffin, M.D., and consultative physician William Humphries, M.D., who found that Ratcliffe was capable of light work.[1]

The record in this case contains conflicting medical opinions as to Ratcliffe's functional capacity. The ALJ is tasked with reviewing the record as a whole, weighing the conflicting evidence, and making a determination as to the functional capacity of the claimant. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The weight to which medical source opinions are entitled varies according to the particular facts of a case, including the source of the opinion, the issues the opinion addresses, the supportability of the opinion, the opinion's consistency with the record, and any other relevant factors that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(c)(1)-(6). In this case, substantial evidence supports the ALJ's decision to

---

[1] Dr. Humphries' opinion is consistent with a finding of medium work; however, in considering the evidence as a whole, the ALJ gave Ratcliffe the benefit of a more restrictive range of light work. R. 14, 16, 363. See 20 C.F.R. 404.1567(c), 416.967(c)(defining medium work).

afford greater weight to the opinions of Drs. Humphries, Hartman and McGuffin, based upon the ALJ's finding that their opinions are supported by and consistent with the record. The relevant medical evidence is briefly summarized as follows:

Ratcliffe has a long history of low back pain; however, his treatment records evidence relatively minor physical findings and conservative treatment measures. From February 2006 through February 2008, Ratcliffe received treatment for his back pain primarily from Dr. Lovelace, who recommended an exercise program and prescribed Lortab. R. 319-28, 379, 386. The physical findings noted by Dr. Lovelace during that time period were paraspinal tenderness along the lower lumbar region and pain with straight leg raise, but normal muscle strength and tone in lower extremities. R. 319-28, 379, 386. On February 19, 2008, Dr. Lovelace completed a checklist questionnaire regarding Ratcliffe's functional capacity. R. 389-90. Dr. Lovelace found that Ratcliffe was unable to lift or carry more than ten pounds, and was limited to sitting less than two hours, and limited to standing and walking less than two hours in an eight hour work day. R. 389. Dr. Lovelace also checked a box indicating that Ratcliffe's pain would interfere with his attention and concentration, and he would likely be absent from work about twice a month. R. 390. Dr. Lovelace did not include any written explanation for his findings, aside from noting "back tenderness" and "paraspinal lower lumbar" as clinical findings. R. 389.

In April 2009, Ratcliffe began seeking treatment for his low back pain at the Free Clinic of Pulaski County. R. 420-26. On April 16, 2009, treatment notes indicate that Ratcliffe had tenderness bilaterally in his lower lumbar spine, and was diagnosed with lumbar degenerative disc disease and arthritis. R. 422.

On June 6, 2009, Dr. Humphries performed a consultative examination of Ratcliffe. R. 360-64. Ratcliffe's chief complaint was low back pain. R. 360. Dr. Humphries' physical

6

exam found that Ratcliffe had moderately reduced range of motion in his back, with mild dorsal kyphosis (curvature of the spine). R. 361. Dr. Humphries noted tenderness to palpation of the paraspinous muscles in the lumbar region, with no evidence of muscle spasm. Dr. Humphries further noted that Ratcliffe had negative straight leg raise with lumbar discomfort; range of motion in Ratcliffe's hips was mildly reduced; but he had normal range of motion in his knees, ankles, shoulders, elbows and wrists. R. 361, 364. Ratcliffe had some diminished muscle mass in his extremities, but his muscle strength was within normal limits, and his gait was mildly abnormal, slightly wide-based. R. 362. Ratcliffe could not heel or toe walk, and got on and off the exam table slowly. Id.

Based on the above findings, Dr. Humphries diagnosed Ratcliffe with chronic lumbar strain, possible obstructive pulmonary disease, and mild degenerative joint disease of his hands and feet. R. 363. Dr. Humphries found that functionally, Ratcliffe is capable of sitting, standing and walking six hours in an eight hour day;[2] lifting fifty pounds occasionally, and twenty five pounds frequently. He further found that Ratcliffe is limited to occasional climbing, kneeling and crawling, and should avoid heights, hazards and fumes. R. 363.

On June 15, 2009, state agency physician Dr. Hartman reviewed Ratcliffe's treatment records and found that Ratcliffe can frequently lift ten pounds, occasionally lift twenty pounds, and stand, walk and sit for six hours in eight hour day. He further found that Ratcliffe can occasionally climb ladders and stoop; and should avoid fumes, odors, dusts, gases, poor ventilation and hazards. R. 63-67. On November 6, 2009, state agency physician Dr. McGuffin

---

[2] Ratcliffe contends that Dr. Humphries' statement that Ratcliffe "would be limited to sitting, standing and walking 6 hours in an 8-hour workday" is ambiguous as to whether Ratcliffe can stand or walk the entire six hours, or stand and walk with periods of sitting for a total of six hours. Pl's Br. at 4, n. 3. The ALJ clarified in his decision that he interpreted Dr. Humphries' opinion as finding that Ratcliffe can perform a full range of light work. R. 16. See Social Security Ruling ("SSR") 83-10, 1983 WL 31252, at *6 (explaining that a full range of light works requires standing, or walking off and on for a total of approximately six hours in an eight hour workday, with sitting occurring intermittently during the remaining time.) I find that this is a reasonable interpretation of Dr. Humphries' opinion, given the findings and conclusions contained in the opinion as a whole.

7

also reviewed Ratcliffe's treatment records and found the same limitations as Dr. Hartman. R. 90-94.

In December 2009, Nancy O'Neill, Nurse Practitioner with the Free Clinic of Pulaski County, referred Ratcliffe for an MRI, and prescribed Ultram and Tylenol for treatment of his pain. R. 422. In April 2010, Ratcliffe returned to the free clinic complaining of low back pain, anxiety and panic attacks. R. 426. Nurse O'Neill against prescribed pain relief medications and encouraged Ratcliffe to perform back exercises. R. 426. Ratcliffe obtained an x-ray of his lumbar spine in May 2010, which showed no abnormalities. R. 424. In September 2010, Ratcliffe reported that nothing helped his back pain, and he was trying to get on disability. R. 421, 426. On January 4, 2011, Ratcliffe visited Nurse O'Neill and reported ongoing back pain, and that his group therapy for anxiety and depression was helping. R. 421. Nurse O'Neill noted that Ratcliffe had shortness of breath on slight exertion, needed assistance to get onto the exam table, could not lift his leg off the table for more than 3 or 4 inches, and had tenderness to palpation. R. 421. Nurse O'Neill prescribed Lidocaine patches and again referred Ratcliffe for an MRI. R. 420-21. There is no indication in the record that Ratcliffe obtained an MRI.

On March 2, 2011, two weeks after the hearing before the ALJ, Ratcliffe saw Robert B. Stephenson, M.D. for an evaluation of his functional capacity. R. 428-32. Dr. Stephenson noted that Ratcliffe complained of a constant nagging, aching pain in his low back, but denied any radiation of the pain, radiculopathy or numbness and weakness in the lower extremities. R. 428. Dr. Stephenson stated that Ratcliffe's only treatment for back pain has been anti-inflammatory narcotic pain medications, one lumbar epidural steroid injection and local Cortisone injections, which did not help. R. 428. Dr. Stephenson also noted Ratcliffe's diagnosis of anxiety/adjustment disorder with depression, panic attacks and some isolating behavior. R. 429.

8

With regard to physical findings, Dr. Stephenson noted tenderness in Ratcliffe's lower lumbar region, mild muscle tightness without spasm, and restricted range of motion of his thoracolumbar spine. R. 430. His straight leg raising tests produced no radicular symptoms, and he had full range of motion of all joints in his lower extremities. R. 430. Ratcliffe was unable to do heel or toe walking, but had normal gait and stance, although he held his back stiffly and walked slowly. R. 430. Dr. Stephenson's findings were chronic low back pain, "significantly related to the patient's comorbid conditions of chronic anxiety and depression. Dr. Stephenson specifically noted that "[t]he patient's subjective low back symptoms appear to outweigh his objective findings." R. 431. Dr. Stephenson further stated that Ratcliffe's problems with anxiety and depression outweigh his low back symptoms, and mental health issues "may actually be the primary contributing cause of the patient's low back complaints." R. 431. Given the above, Dr. Stephenson found that Ratcliffe was limited to sitting, standing and walking only two hours per day in a work environment. He found that Ratcliffe was unable to lift more than ten pounds, and that his pain would interfere with his attention and concentration on a frequent basis. R. 432. Dr. Stephenson estimated that Ratcliffe would likely be absent from work about four times a month or more. R. 432.

On March 21, 2011, Nurse O'Neill completed a checklist functional assessment, and found that Ratcliffe could lift and carry twenty pounds occasionally, less than ten pounds frequently; and sit, stand and walk less than two hours in an eight hour workday. R. 433. She also checked off boxes indicating that Ratcliffe's pain would interfere with his attention and concentration and that he would be absent from work more than four times a month. R. 434.

Based on the evidence set forth above, there is substantial evidence in the record to support the ALJ's decision to adopt the opinions of Drs. Humphries, Hartman and McGuffin,

9

that Ratcliffe's physical impairments did not restrict his ability to perform light work, rather than the more restrictive findings of Dr. Stephenson, Dr. Lovelace and Nurse O'Neill.

As a whole, the physical evidence supports Dr. Humphries' finding that Ratcliffe is capable of sitting, standing and walking up to six hours in an eight hour workday. He was found to have mild tenderness in his low back with no radicular symptoms, normal strength in his extremities, and at most a mildly abnormal gait. R. 362, 421, 430. He was able to climb on and off an exam table, albeit slowly. R. 362, 421, 430. The x-ray of Ratcliffe's lumbar spine was negative, and there was no evidence of any motor or sensory loss. R. 424. Conversely, the physical evidence contradicts the opinions of Dr. Lovelace, Dr. Stephenson and Nurse O'Neill that Ratcliffe is incapable of sitting, standing or walking more than two hours in an eight hour workday.

Ratcliffe's course of treatment also supports the less restrictive findings of Dr. Humphries. Prior to and following his alleged onset date, Ratcliffe received only sporadic, conservative treatment of his low back pain. He was prescribed pain medication, and told to perform physical exercises and obtain an MRI. In February 2009, (four months prior to Dr. Humphries' opinion), Ratcliffe reported that he was working part-time as a cook. R. 351, 357. Ratcliffe notes that this work was part-time at a family member's restaurant; however, he does not indicate that he required special accommodations to perform this employment. Pl. Br. P. 7, n 8.

Ratcliffe takes issue with the reasoning provided in the ALJ's opinion for discounting the opinions of Dr. Lovelace, Dr. Stephenson and Nurse O'Neill, referencing certain "internal inconsistencies" in the ALJ's decision. Pl. Br. pp. 3-13. While Ratcliffe criticizes certain

wording and phrases of the ALJ's decision, overall these imperfections yield to the substantial evidence standard.

Ratcliffe argues that the ALJ did not properly explain his decision to give Dr. Lovelace's opinion no weight under 20 C.F.R. 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693 (E.D. Va. Dec. 29, 2010).

As the ALJ noted, Dr. Lovelace's opinion was given almost two years before Ratcliffe's alleged disability onset date. More importantly, Dr. Lovelace's findings on physical examination do not support his opinion that Ratcliffe is restricted to sitting, standing or walking less than two hours in an eight hour workday. Furthermore, Ratcliffe was actively seeking work throughout 2008 (R. 333, 338, 343, 351) which conflicts with Dr. Lovelace's very limiting functional report.

11

Additionally, Ratcliffe's argument that the ALJ did not properly consider all of the six factors set forth in the regulations when evaluating Dr. Lovelace's opinion is without merit. While the regulations require the ALJ to consider all six factors, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012)(report and recommendation), adopted, 2012 WL 1569564 (May 3, 2012). In this case, the ALJ considered Dr. Lovelace's treatment notes, his examining and treating relationship with Ratcliffe, but found that Dr. Lovelace's opinion was not supported by or consistent with his treatment records or the record as a whole. R. 14, 16-17.

Ratcliffe also argues that the ALJ improperly discounted the opinion of Nurse O'Neill. Nurse Practitioners are not "acceptable medical sources" under the regulations. 20 C.F.R. § 416.913(a). However, evidence from such sources may be used to show the severity of an individual's impairment and how it affects the individual's ability to function. SSR 06-03p. An ALJ is required to at least consider the opinion of such a non-acceptable medical source, especially when there is evidence in the record to suggest that the non-acceptable medical source had a lengthy relationship with the claimant and can present relevant evidence as to the claimant's impairment or ability to work. Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011); SSR 06-03p. Here, the ALJ noted that Nurse O'Neill is not an acceptable medical source; however, the ALJ considered her opinion regarding Ratcliffe's functional capacity, and found that it was not supported by her clinical findings. R. 17. The only physical findings listed in Nurse O'Neill's report are that Ratcliffe became short of breath on slight exertion, he needed assistance to get onto the exam table, and was unable to lift his left leg off the exam table more than 3 or 4 inches. R. 433. Nurse O'Neill did not note any problems with Ratcliffe's attention or

concentration. R. 431. Nurse O'Neill's benign findings simply do not support her finding that Ratcliffe cannot stand, walk or sit more than two hours a day, or that he would miss work more than four times a month.

With regard to Dr. Stephenson, his opinion acknowledges that Ratcliffe's physical findings on examination were not substantial, and were outweighed by Ratcliffe's subjective complaints. Although Dr. Stephenson stated that Ratcliffe's mental health issues "may" be the primary contributing cause of his low back pain complaints, he did not perform a mental examination of Ratcliffe, nor does the record indicate that he has a specialization or expertise in mental health. R. 429-431. Additionally, Dr. Stephenson's only notes regarding Ratcliffe's mental status were observations that Ratcliffe was "somewhat mildly nervous" and had "mildly decreased mood and affect." R. 429. Otherwise, Ratcliffe was alert, oriented and had a satisfactory fund of knowledge. R. 429-430. Dr. Stephenson did not observe any problems with Ratcliffe's attention and concentration. R. 432. Thus, there is substantial evidence to support the ALJ's decision to give Dr. Stephenson's opinion little weight.

Overall, Dr. Humphries' clinical findings on examination are not exceedingly different from those of Dr. Lovelace, Dr. Stephenson and Nurse O'Neill. R. 361-62, 421, 430-31, 433. The difference of opinion with regard to Ratcliffe's functional capacity lies in the physicians' interpretation of those physical findings. It is the province of the ALJ to weigh the conflicting interpretations of the physical evidence in the record, and make a determination as to the functional capacity of the claimant. In this case, the ALJ recognized that Ratcliffe suffered from severe low back pain, and as a result, has substantial functional limitations. The ALJ's finding that Ratcliffe can perform a range of light work demonstrates that he considered and accounted for the limited physical findings and Ratcliffe's subjective complaints. Given the evidence set

13

forth above, there is substantial support for the ALJ's decision to adopt Dr. Humphries' opinion that Ratcliffe's physical symptoms were not disabling.

**Mental Impairments**

Ratcliffe also argues that the ALJ did not adequately address his mental impairments or the combined effect of his mental and physical impairments. Specifically, Ratcliffe claims that the ALJ did not discuss in detail medical reports noting Ratcliffe's social isolation, panic attacks, general depression or diagnosis of adjustment personality disorder.

The ALJ found that Ratcliffe suffered from a severe impairment of anxiety. The ALJ reviewed Ratcliffe's mental impairment in step three of his analysis, and found that Ratcliffe suffered moderate difficulties with social functioning, concentration, persistence and pace; had no restrictions in his activities of daily living, and no episodes of decompensation. In step four of his analysis, the ALJ reviewed Ratcliffe's mental health treatment records in detail. The ALJ noted the unremarkable clinical findings, as well as indications that Ratcliffe's symptoms are controlled with medication. The ALJ accounted for Ratcliffe's mental impairments by limiting him to tasks with short, simple instructions, with no more than occasional interaction with others in the workplace, and only very little interaction with the public. Thus, there is no basis for Ratcliffe's argument that the ALJ did not undertake a "meaningful evaluation of the record" with regard to his mental impairments.

Further, substantial evidence supports the ALJ's finding that Ratcliffe suffered no limitations in activities of daily living, and only moderate difficulties with regard to social functioning and concentration, persistence, and pace. Although Ratcliffe has a history of treatment for anxiety, depression and adjustment disorder, his treatment notes consistently reflect that he was stable with medication. R. 341-354, 367, 369-71, 392-418. Ratcliffe's clinical

findings were generally unremarkable, aside from reporting depressed or anxious moods, and the evidence shows that Ratcliffe's condition generally improved with treatment. Additionally, there was no mental health professional during the relevant time period that provided a mental assessment more restrictive than that found by the ALJ. While there is no question that Ratcliffe suffered from mental impairments, the limitations caused by those impairments were accounted for by the ALJ in the RFC.

### **Combination of Impairments**

Ratcliffe also contends that the ALJ failed to properly evaluate the combined severity of her physical and mental impairments. It is well settled that the ALJ must consider the combined effect of a claimant's impairments when determining a claimant's ability to work, and "adequately explain his or her evaluation of the combined effects of the impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [the] claimant unable to engage in substantial gainful activity . . . . [T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." Id.

However, "an ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, 7:10CV00313, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011). Here, the ALJ explicitly found in his opinion Ratcliffe did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14. Furthermore, the ALJ's written opinion reveals that he thoroughly considered all of the evidence relating to Ratcliffe's alleged physical and mental impairments

15

when developing an RFC and finding Ratcliffe not disabled. The ALJ's review of the medical evidence was not fragmented, as denounced by Walker, but a balanced approach that addressed the symptoms of Ratcliffe's back pain and anxiety in an integrated manner. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Ratcliffe's impairments as supported in the record, providing restrictions that are both mental (e.g. "tasks with short, simple instructions" with occasional interaction with others in the workplace) and physical (e.g. "light work"). R. 14. For these reasons, I find that the ALJ did not fail to analyze the combined effect of Ratcliffe's physical and mental problems.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Ratcliffe's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: January 24, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge